UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EDWARD NORTON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No. 3:10-cv-05500-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 29, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On September 6, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of August 5, 2005, due to the following impairments: sciatica, thoracic lumbar sprain, a speech impediment, color blindness, dyslexia, sclerosis, a degenerative disc, a bulging disc, spondylitis, psoriasis, anxiety, panic attacks, depression, migraines, insomnia, and a

REPORT AND RECOMMENDATION - 1

learning disability. See Tr. 21, 96, 119.  His application was denied upon initial administrative review and on reconsideration. See Tr. 21, 64, 71.  A hearing was held before an administrative law judge ("ALJ") on March 17, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 34-61.

On March 30, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 21-33.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 14, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court seeking judicial review of defendant's decision on July 14, 2010. See ECF #1-#3.  On September 29, 2010, the administrative record was filed with the Court. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; and (2) in evaluating the lay witness evidence in the record.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

REPORT AND RECOMMENDATION - 2

F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

REPORT AND RECOMMENDATION - 3

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

      A.     Dr. Brown's June 9, 2008 Opinion

In his decision, the ALJ found in relevant part:

> On June 9, 2008, the claimant was psychologically evaluated by Norma L. Brown, Ph.D. Dr. Brown diagnosed the claimant with depressive disorder, not otherwise specified (NOS) and possible diagnoses of learning disabilities and Asperger's disorder. He is reported to have some difficulty in areas where academics are concerned and had decreased motivation. He has very low tolerance for frustration, decreased patience, socially isolated and has

REPORT AND RECOMMENDATION - 4

very poor social judgment. He is also reported to never brush his teeth, has body odor, poor hygiene and easily agitated. It is opined he is markedly to severely limited in his ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. He is markedly limited in his ability to relate appropriately to coworkers and supervisors and to care for self, including personal hygiene and appearance. He is moderately limited in his ability to understand, remember and follow complex instructions, to learn new tasks, to exercise judgment and make decisions, to interact appropriately in public contacts, and to control physical or motor movements and maintain appropriate behavior. (Ex. 30F) He returned on June 23, 2008 for additional cognitive testing and it is noted that the results indicated severe impairment in several areas. He again demonstrated a significant difference between his verbal IQ and performance IQ. It is also noted that the Asperger's questionnaire indicated a diagnosis of Asperger's disorder which is consistent with his presentation as well as his significantly lower verbal ability compared to his performance score. His performance on the WRAT4 indicates severe learning disabilities in reading and written expression. His reading ability placed him between the fourth and sixth grade level compared to his math skills which are college level. His spelling ability placed him in the first grade level. It is opined that he will have significant difficulty filling out applications for work due to his poor reading and spelling ability. It was also opined that when combined with his poor grooming and hygiene as well as his poor social skills, it would be difficult for him to be hired in many jobs and keep a job. He is diagnosed with Asperger's disorder; depressive disorder, NOS; disorder of written expression and reading disorder. (Ex. 24F)

Tr. 25. Plaintiff argues that because the ALJ found plaintiff had the ability to work without any limitations due to poor grooming and hygiene or his poor social skills – while giving no reasons for rejecting Dr. Brown's opinion to the contrary – he erred.

In terms of plaintiff's mental functional capabilities, the ALJ found in relevant part:

**. . . The claimant . . . has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember and carrying out simple 2 and 3 step instructions; have an average ability to perform sustained work activities (i.e., can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence; can make judgments on simple work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes all within a routine work setting. He is unable to deal with the general public as in a sales position or where the general public is frequently**

REPORT AND RECOMMENDATION - 5

**encountered as an essential element of the work process.**

Tr. 27 (emphasis in original).  Defendant argues the ALJ properly accounted for plaintiff's poor grooming and hygiene and poor social skills as found by Dr. Brown, by stating that plaintiff was unable to deal with the general public as set forth above.  But as plaintiff points out, Dr. Brown did not restrict her limitations only to those situations where the general public is encountered, and clearly poor grooming, hygiene and social skills are just as likely to significantly impact the ability to relate to supervisors and co-workers as well.

Defendant goes on to assert that Dr. Brown did not state plaintiff could not get a job due to his poor hygiene.  The record, though, does not support this assertion, as Dr. Brown expressly stated it would "be difficult for him to <u>be hired</u> in many jobs and keep a job because of his poor grooming and hygiene as well as his poor social skills." Tr. 422 (emphasis added).  Indeed, the ALJ himself noted this fact in his decision. <u>See</u> Tr. 25.  In addition, Dr. Brown assigned plaintiff a global assessment of functioning ("GAF") score of 48, indicating "'[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' <u>such as an inability to keep a job</u>."[1] <u>See</u> Tr. 423; <u>see</u> <u>also</u> <u>Pisciotta</u>, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) at 34) (emphasis added); <u>see</u> <u>also</u> <u>Cox v. Astrue</u>, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

While it may be, as defendant also notes, that plaintiff testified at the hearing that he took two to three showers a week (<u>see</u> Tr. 41), such testimony is not sufficient to reject the opinion of Dr. Brown with respect to hygiene and grooming, given that there is nothing in that opinion that

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" <u>Pisciotta v. Astrue</u>, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  It is "relevant evidence" of the claimant's ability to function mentally. <u>England v. Astrue</u>, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

REPORT AND RECOMMENDATION - 6

would call into question Dr. Brown's observations of plaintiff at the time, and that showering on less than a daily basis certainly still could result in poor hygiene. More importantly, however, is that the ALJ did not provide this as a reason for rejecting Dr. Brown's opinion, and thus it would appear to be an improper *post hoc* rationale. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss).

Lastly, defendant argues that any error committed by the ALJ here was harmless, as none of the jobs the vocational expert identified as ones an individual such as plaintiff could perform, require significant people skills or interaction. See Tr. 57-58; Dictionary of Occupational Titles ("DOT") 323.687-014 (cleaner, housekeeping); DOT 369.687-018 (folder); DOT 706.684-022 (assembler, small products). But neither the information concerning these jobs contained in the DOT nor the vocational expert's own testimony indicate there would not be any interaction with others, such as supervisors and co-workers, or that the difficulties with poor hygiene, grooming and social skills identified by Dr. Brown would not present a barrier to acquiring and/or keeping those jobs, even if people skills or interaction is not significant. The ALJ's error here, therefore, was not harmless. [2]

    B.    The State Agency Psychological/Psychiatric Evaluation Forms Completed by Dr. Brown and Dr. Wheeler

As indicated above, Dr. Brown evaluated plaintiff two times, once on June 9, 2008, and a second time later that month. In regard to the June 9, 2008 evaluation, Dr. Brown completed at that time a state agency psychological/psychiatric evaluation form, in which she checked several boxes indicating plaintiff was moderately to severely limited in a number of cognitive and social functional areas. See Tr. 474. The same evaluation form was completed by Kimberly Wheeler,

---

[2] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

REPORT AND RECOMMENDATION - 7

Ph.D., on June 20, 2007, and again on November 6, 2007, in which she too checked a number of boxes indicating the existence of moderate to marked cognitive and social functional limitations in several areas. See Tr. 434, 454.

In addition to summarizing Dr. Brown's above June 9, 2008 findings and conclusions, the ALJ addressed those findings and the two forms completed by Dr. Wheeler as follows:

> The claimant was also referred to Kimberly Wheeler, Ph.D. on June 20, 2007 for a psychological evaluation. Dr. Wheeler diagnosed the claimant with depressive personality disorder and noted the claimant's Beck Depression Inventory (BDI) scores were in the marked to severe range and exacerbated by habitual depressive outlook and verbal style. He is reported to be pessimistic, woeful and came across as adolescent in his energy and complaints. He was flustered easily and was easily aggravated and agitated. It was opined that he is markedly limited in relating appropriately to coworkers and supervisors and in controlling physical or motor movements and maintain [sic] appropriate behavior. He is moderately limited in his ability to understand, remember and follow complex instructions, to exercise judgment and make decisions, to respond appropriately to and tolerate the pressure and expectations of a normal work setting and to care for self, including personal hygiene and appearance. (Ex. 25F)  She again evaluated the claimant on November 6, 2007 and added a diagnosis of dysthymia. She reports his BDI is substantially diminished from his June score and is now in the moderate range. His ability to relate appropriately to coworkers and supervisors is now moderately limited. He is also moderately limited in his ability to exercise judgment and make decisions and respond appropriately to and tolerate the pressures and expectations of a normal work setting. He is markedly limited in his ability to care for self, including personal hygiene and appearance and to control physical or motor movements and maintain appropriate behavior. (Ex. 27F)
>
> . . .
>
> . . . [T]he undersigned accords little weight to the check block form reports done for the [state agency by Dr. Brown and Dr. Wheeler], and predicated on self-report in a secondary gain context. (Ex. 25F; . . . 27F; 30F)  Opinions rendered on check-box or form reports which do not contain significant explanation of the basis for the conclusions may appropriately be accorded little or no weight. . . . The definitions of "marked" or "severely limited" used by [the state agency] differs from the definition contained in the Social Security Administration regulations for assessing impairment. Moreover, the comments in the section entitled "Mental Health Priority Populations" in the [state agency] form, make it clear that both the standards for completing the form, and the public interest served by the form, are different from the

REPORT AND RECOMMENDATION - 8

> standards and objectives of these hearings under the authority of the Social Security Administration. Accordingly, the assessment of marked limitations and findings in these public assistance evaluations, done under State of Washington rules, are not entitled to controlling weight . . .

Tr. 25, 30-31. Plaintiff argues these are not valid reasons for rejecting the findings contained in the evaluation forms completed by Dr. Brown and Dr. Wheeler. The undersigned agrees.

First, although it is true that the Ninth Circuit has expressed preference for individualized medical opinions over those provided on "check-off" forms, the fact that an opinion is provided on such a form alone is not a sufficient basis to reject it. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983). Indeed, defendant himself often has upheld adverse disability determinations based at least in part on such check-off forms. Nor is there any indication that Dr. Brown or Dr. Wheeler were influenced by a secondary gain motive or a desire to assist plaintiff in his attempt to receive disability benefits. That is, absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. See Lester, 81 F.3d at 832. Nor does the undersigned agree that the state agency evaluation forms completed here did contain a "significant explanation" for the findings contained therein.

An ALJ need not accept a medical source's opinion if it is not adequately supported by objective medical evidence. Batson, 359 F.3d at 1195. "'[W]hen mental illness is the basis of a disability claim," however, such objective medical evidence "may consist of the diagnoses and observations of professionals trained in the field of psychopathology.'" Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting psychiatric diagnosis is competent evidence). In addition, the performance of a mental status examination on its own has been found to be a proper basis upon which to form a medical diagnosis. See Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa

REPORT AND RECOMMENDATION - 9

1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

As pointed out by plaintiff, in addition to the checked boxes, Dr. Brown and Dr. Wheeler also provided written comments containing both their personal observations of plaintiff as well as psychological testing results. See Tr. 432-38, 452-58, 472-75, 478.  Further, each psychologist conducted their own mental status examinations and provided the results thereof as part of their evaluation reports. See Tr. 436-38, 456-58, 478.  Accordingly, the ALJ erred in relying on these bases to reject the reports of Drs. Brown and Wheeler.  For the same reasons, the ALJ also erred in rejecting their reports on the basis that those reports were "predicated" on plaintiff's own self-report, even though Dr. Brown and Dr. Wheeler may have relied to some extent on what plaintiff reported to them, and plaintiff has not specifically challenged the ALJ's determination that he is not entirely credible. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted); see also Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

The undersigned further agrees with plaintiff that the fact that the state agency's use of the terms "marked" and "severely limited" differ from those employed by defendant is irrelevant,

REPORT AND RECOMMENDATION - 10

as the ALJ fails to explain why the former terms, which are defined on the evaluation forms, are so unclear as to not provide a proper basis upon which to evaluate the findings of Dr. Brown and Dr. Wheeler. See Tr. 432, 452, 472. The same is true in regard to any differences there may be in the standards for completing, and program objectives of, those forms. That is, the ALJ simply has not adequately explained what impact, if any, such supposed differences would have on the ability of the administrative adjudicator to evaluate the actual findings and conclusions provided by Drs. Brown and Wheeler.

Defendant argues the functional limitations Dr. Brown and Dr. Wheeler checked on the evaluation forms they completed were adequately accounted for by the ALJ's restricting him to making judgments on simple work-related decisions, and to being unable to deal with the general public. But clearly these two limitations cannot be seen to encompass all of the limitations Drs. Brown and Wheeler checked. For example, they also indicated plaintiff was functionally limited in his ability to relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressure and expectations of a normal work setting, care for himself (which includes personal hygiene and appearance), and control his physical and motor movements and maintain appropriate behavior. See Tr. 434, 454, 474. Thus, here too, defendant's assertion that the ALJ's error here was harmless is without merit.

II.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

REPORT AND RECOMMENDATION - 11

link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written statements from plaintiff's mother and several of his friends, in which they set forth their observations of plaintiff's symptoms and limitations. See Tr. 169-74, 176-80, 182-86, 188-93, 217-22. In regard to those statements, the ALJ found as follows:

> The undersigned has also considered the statements from the lay witnesses in Exhibits 5E, 12E,13E, 14E, 15E and 17E and has found that they are not supported by objective medical evidence with regards to the limitations in the claimant's sitting, standing and walking. While these statements have been considered, the close relationship between the claimant and these individuals and the possibility that their statements were influenced by their desire to help the claimant cannot be entirely ignored in deciding how much weight to accord the statements. The statements do not establish that the claimant is disabled since the witnesses are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms. Moreover, by virtue of the relationship as claimant's mother (Ex. 5E and 17E), the witness cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. As the weight of the evidence fails to document clinical abnormalities that could reasonably be expected to have produced persistent symptoms or work-related limitations consistent with the allegations of the claimant's documentary witnesses, it must be considered whether their reports merely constitute a recitation of the claimant's own subjective allegations that have not been accepted as fully credible in this adjudication. Most importantly, significant weight cannot be given to the statements because it [sic], like the claimant's testimony, is simply not consistent with the claimant's activities and preponderance of the opinions and observations by medical doctors in this case.

Tr. 31-32. Plaintiff argues the ALJ failed to provide germane reasons here for rejecting the lay witness statements, which evidence limitations in plaintiff's ability to sit and stand and a need to lie down during the day, and which the ALJ did not appear to adopt. See Tr. 27, 169-71, 176-77, 184, 188, 190, 218-19. The undersigned once more agrees.

REPORT AND RECOMMENDATION - 12

Citing <u>Bruce v. Astrue</u>, 557 F.3d 1113 (9th Cir. 2009), plaintiff first argues the ALJ erred in rejecting the lay witness statements because they are not supported by the medical evidence in the record.  It is true that Ninth Circuit held in <u>Bruce</u> that the claimant's wife's testimony in that case could not be discredited "as not supported by medical evidence in the record." <u>Id.</u> at 1116. In so holding, the Ninth Circuit relied on its prior decision in <u>Smolen v. Chater</u>, 80 F.3d 1273 (9th Cir. 1996), which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing, the ALJ violated defendant's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records." <u>Bruce</u>, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original).

The Ninth Circuit, however, did not address two earlier decisions in which it expressly held that "[o]ne reason for which an ALJ my discount lay testimony is that it conflicts with medical evidence." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001) (citing <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1995 (9th Cir. 1984) (ALJ properly discounted lay testimony that conflicted with available medical evidence)).  Accordingly, although <u>Bruce</u> is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of <u>Lewis</u> and <u>Vincent</u> were made in that case, and that neither of the holdings in those two earlier decisions concerning this issue were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed.

Nevertheless, that apparent conflict in Ninth Circuit precedent does not prevent resolution of this issue in this case.  This is because although the ALJ did discuss the medical evidence in the record concerning plaintiff's physical impairments and limitations elsewhere in his decision, he did not state with any specificity what portion or portions thereof were not consistent with the

REPORT AND RECOMMENDATION - 13

observations of the lay witnesses. As such, it is not possible to determine whether this reason is a germane one. The same is true in regard to the ALJ's statement that the lay witness statements are "simply not consistent with" plaintiff's activities. Tr. 32. Nor do any of the other reasons the ALJ gave for rejecting the above lay witness statements appear to be germane as well.

For example, the undersigned agrees with plaintiff that it was questionable for the ALJ to reject the lay witness statements on the basis of their close relationship and the possibility they were influenced by a desire to help plaintiff. Family members and friends who are in a position to observe the claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and activities. See Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). In Sprague, the Ninth Circuit indicated that the existence of a "close relationship" between the lay witness and the claimant – and the potential to be "influenced" by the "desire to help" – can be viewed as being "germane" to that particular lay witness. Id. at 1232 (citing 20 C.F.R. § 404.1513(e)(2)). In Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), the Court of Appeals again found the ALJ in that case properly considered the close relationship between the claimant and his girlfriend, and the possibility that she might have been influenced by the desire to help him. See id. at 972.

In Bruce, however, the Ninth Circuit reiterated its prior position that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition." Id. at 1116 (quoting Dodrill, at 1918-19. The Ninth Circuit noted its prior decision in Gregor, but nevertheless went on to find the ALJ erred in rejecting the lay witness testimony in Bruce on the basis of that witness's close relationship with the claimant, without explaining this difference in its two rulings. See id. (citing 464 F.3d at 972).

The only explanation the undersigned can glean from reviewing those rulings is that in

REPORT AND RECOMMENDATION - 14

Greger there appears to have been at least some evidence – although the Ninth Circuit did not discuss exactly what that evidence was – of the lay witness "possibly" being "influenced by her desire to help" the claimant in addition to the "close relationship" she had with him (464 F.3d at 972) – while in Bruce, no such evidence existed.  More recently, in Valentine v. Commissioner of Social Security, 574 F.3d 685 (9th Cir. 2009), the Ninth Circuit stated that "evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." Id. at 694 (emphasis in original).

In this case, however, the ALJ has pointed to no evidence in the record of secondary gain considerations or a desire to help in addition to the close relationships the lay witnesses had with plaintiff.  That is, the ALJ here appears to have rejected the lay witness statements in the record merely on the basis that they were interested parties "in the abstract," rather than on evidence of any actual exaggeration for the purpose of accessing benefits on their part.

In addition, while it may true that lay witnesses are not qualified to give opinions on the ultimate issue of a claimant's disability, as noted above must consider the "observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague, 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2)).  Those descriptions provided by "friends and family members in a position to observe a claimant's symptoms and daily activities," furthermore, again "have routinely been treated as competent evidence." Id.  As such, none of the reasons provided by the ALJ for rejecting the lay witness statements were valid in this case.

Defendant argues the ALJ also rejected the lay witness statements because they included limitations that were similar to those plaintiff himself reported, and because the ALJ did not err in discounting plaintiff's credibility.  The Ninth Circuit in Valentine did hold that:

REPORT AND RECOMMENDATION - 15

> [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."

574 F.3d at 694. In this case, however, the ALJ did not actually reject the lay witness statements on this basis, but rather merely posited that "it must be considered whether their reports merely constitute a recitation of [plaintiff's] own subjective allegations." Tr. 32. Nor did the ALJ show in his decision such to be the case in regard to those reports.

Finally, defendant argues that as with the other errors committed by the ALJ, any error on the ALJ's part here too was harmless. Specifically, defendant asserts the ALJ's determination to limit plaintiff to light work adequately accounts for any of those described in the lay witnesses in their statements. But as pointed out by plaintiff, the vocational expert testified at the hearing that if an individual had to lie down during the work day, this limitation would eliminate competitive employment for that individual. See Tr. 59. As such, while it is not entirely clear the ALJ would be required to adopt such a limitation – given that it appears much of the medical evidence in the record provides little if any support therefor (see Tr. 224, 226, 228-29, 231, 235-37, 243, 245-47, 256, 258-59, 262-63, 272-78, 280-87, 289-302, 349, 352-69, 378-85, 416, 442-48, 462-66, 468-70, 508) – it is quite clear that a limitation to light work does not generally include the need to lie down during the workday.[3]

---

[3] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

REPORT AND RECOMMENDATION - 16

III.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional limitations, and in regard to the lay witness evidence in the record concerning plaintiff's ability to sit, stand and need to lie down, it is unclear whether the ALJ's assessment of his residual functional capacity or the ALJ's determination at step five of the sequential disability

---

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).

REPORT AND RECOMMENDATION - 17

evaluation process is supported by the substantial evidence in the record.[4]  Accordingly, remand for further consideration of these issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the Court should reverse defendant's decision and remand this matter to defendant for further administrative proceedings in accordance with the

---

[4] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made there, and the sequential evaluation process ends. See id.  If the disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," then the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.

  A claimant's residual functional capacity ("RFC") assessment is used at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  In this case, the ALJ found plaintiff to be capable of performing a modified range of light work, including additional mental and physical non-exertional limitations. See Tr. 27.  As discussed above, though, the ALJ erred in evaluating the evidence in the record, which calls into doubt the validity of the ALJ's RFC assessment.

  If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  The ALJ's description of the claimant's disability thus "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations found not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

  At the hearing, the ALJ posed a hypothetical question to the vocational expert that contained substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. See Tr. 56-57.  In response to that hypothetical question, the vocational expert testified, as noted above, that there were other jobs an individual with those limitations – and who had the same age, education and work background as plaintiff – could perform. See Tr. 57-58.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 32-33.

  Again, however, it is not at all clear the ALJ's hypothetical question the ALJ posed accurately described all of plaintiff's functional limitations, given the ALJ's errors in evaluating the evidence in the record.  In addition, it is also not entirely clear that the ALJ would be required to find plaintiff disabled based on those errors, given that the medical evidence in the record, as discussed above, appears to contradict the lay witness statements concerning their observations of his limitations on sitting and standing and need to lie down.  The medical evidence in the record that bears on plaintiff's mental functional capabilities, furthermore, is not in complete agreement, with at least two other examining medical sources, and two non-examining medical sources, finding him to be more capable than either Dr. Brown or Dr. Wheeler did. See Tr. 248-54, 370-76, 387-99, 401-03, 415.  As such, remand for further administrative proceedings rather than an outright award of benefits is appropriate.

REPORT AND RECOMMENDATION - 18

1 findings contained herein.

2 Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 29, 2011**, as noted in the caption.

DATED this 13th day of April, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19